IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-116-D-19
No. 7:20-CV-158-D

DONALD RAY GARNER,  )
                    )
Defendant and Petitioner, )
                    )
v.                  )           **ORDER**
                    )
UNITED STATES OF AMERICA, )
                    )
Respondent.         )

On July 22, 2020, Donald Ray Garner ("Garner" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and for appointment of counsel [D.E. 1519]. On November 11, 2021, Garner, through counsel, filed a memorandum in support of his motion for compassionate release [D.E. 1607]. On December 13, 2021, the government responded in opposition to Garner's motion for compassionate release [D.E. 1609]. On August 27, 2020, Garner moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 120-month sentence [D.E. 1531] and filed a memorandum in support [D.E. 1532]. On November 16, 2021, the government moved to dismiss Garner's 2255 motion [D.E. 1604] and filed a memorandum in support [D.E. 1605]. That same day the court informed Garner about the motion to dismiss and the consequences of failing to respond [D.E. 1606]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). As explained below, the court grants the government's motion to dismiss, dismisses Garner's section 2255 motion, and denies Garner's motion for compassionate release and request for home confinement.

I.

Garner was a long-time drug dealer and a member of the McKoy drug trafficking organization in Sampson County, North Carolina. On August 21, 2017, without a written plea agreement, Garner pleaded guilty to conspiracy to distribute and possess with intent to distribute a quantity of cocaine and a quantity of cocaine base (crack) in violation of 21 U.S.C. § 846. See [D.E. 670]. The Presentence Investigation Report ("PSR") calculated the drug weight Garner was accountable for as "a marijuana equivalency of 812.8 kilograms." PSR [D.E. 1231] ¶¶ 13, 64. Garner's counsel objected to the drug weight attributed to Garner and to Garner not receiving a mitigating role reduction. See PSR Add. [D.E. 1231]; [D.E. 827]. On October 15, 2018, the court held Garner's sentencing hearing. See [D.E. 1239]. At the hearing Garner's counsel withdrew his objection to the Garner not receiving a minor role enhancement and argued his objection to the drug weight attributed to Garner. See Sen. Tr. [D.E. 1296] 4–11. After overruling the drug weight objection, the court found Garner's total offense level to be 25, his criminal category to be V, and his advisory guideline range to be 100 to 125 months' imprisonment. See id. at 12. After thoroughly considering the arguments of counsel, Garner's statement, and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Garner to 120 months' imprisonment. See id. at 12–25; [D.E. 1257]. Garner appealed. See [D.E. 1262]. On August 6, 2019, the United States Court of Appeals for the Fourth Circuit affirmed Garner's sentence. See United States v. Garner, 774 F. App'x 159, 160–161 (4th Cir. 2019) (per curiam) (unpublished).

II.

Aa for the government's motion to dismiss Garner's 2255 motion, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S.

2

662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

In Garner's section 2255 motion, Garner argues that his trial counsel was ineffective because: (1) his lawyer allegedly failed to investigate and present his serious mental illness (i.e., bipolar disorder) as a mitigating factor at sentencing; (2) his lawyer withdrew an objection to the lack of a minor role reduction at sentencing, allegedly without consulting with Garner and without his consent; (3) his lawyer allegedly did not contest the drug weight attributed to Garner; and (4) his lawyer did not object "when the court in sentencing relied solely on [section] 3553(a) factors and did not give an individualized assessment as to defendant's non-frivolous mitigating arguments for a lower sentence." [D.E. 1532] 4–6, 8; see [D.E. 1532].

3

Although Garner styles his objections as ineffective assistance of counsel claims, Garner challenges the court's consideration and exercise of its discretion in weighing the arguments and relevant factors at sentencing. Garner, however, already challenged the court's sentence on appeal and the Fourth Circuit affirmed Garner's sentence as substantively reasonable. See Garner, 774 F. App'x at 160–61. Garner cannot relitigate his claims that failed on direct appeal by repackaging them as ineffective assistance of counsel claims. Cf. Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted) (Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, . . . the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve."); see Weaver v. Massachusetts, 137 S. Ct. 1899, 1912 (2017); Jackson v. Kelly, 650 F.3d 477, 493 (4th Cir. 2011). Thus, the claims fail.

Alternatively, Garner has not plausibly alleged ineffective assistance of counsel because he has not plausibly alleged deficient performance or prejudice. The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996). To state a claim of ineffective assistance of counsel in violation of the Sixth

4

Amendment, Garner must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

As for Garner's claim about his mental health condition, Garner's lawyer raised Garner's depression and bipolar disorder at sentencing. See Sent. Tr. at 14. Garner has not alleged what other information about his bipolar disorder defense counsel could have presented at sentencing. Defense counsel's performance at sentencing was adequate and falls within the wide range of professional performance. See Strickland, 466 U.S. at 691. On this record, there was no deficient performance. See id.

Garner also has not alleged prejudice from his counsel's alleged lack of investigation and arguments about his bipolar disorder at sentencing. To prove prejudice from deficient performance at sentencing, a defendant must prove a reasonable probability that the defendant would have been sentenced differently if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 955–56 (2010); United States v. Carthorne, 878 F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The PSR recounted Garner's history of bipolar disorder, and counsel raised it at sentencing. See

5

PSR ¶ 51; Sent. Tr. at 14, 20–21. Moreover, the court considered all of those arguments in fashioning his sentence. See Sent. Tr. at 20–21. Because the court considered Garner's mental health condition in fashioning its sentence, Garner cannot show prejudice.

Next, Garner claims that counsel "never spoke up to the court as to the government only being able to prove that [Garner] was only responsible for 19 grams." [D.E. 1532] 4. The record refutes this allegation. Garner's counsel objected to the drug weight in the PSR, raised the issue again in his sentencing memorandum, and vigorously argued the drug weight objection at sentencing. See PSR Add. ¶ 1; [D.E. 987] 1–3; Sent. Tr. at 4–11. Therefore, Garner has not plausibly alleged deficient performance concerning the drug weight.

Garner also claims that defense counsel was ineffective for not objecting "when the court in sentencing relied solely on [section] 3553(a) factors and did not give an individualized assessment as to defendant's non-frivolous mitigating arguments for a lower sentence." [D.E. 1532] 8. This claim is nonsensical. The section 3553(a) factors ensure that the sentencing court makes an individualized assessment of the nature and circumstances of the offense, the history and characteristics of the defendant, and the goals of sentencing as they apply in the individual case. See 18 U.S.C. § 3553(a). The court considered the section 3553(a) factors and discussed its individualized assessment of Garner, including his involvement in an extensive drug trafficking organization, his family support, his age, and his extensive criminal history in fashioning Garner's sentence. See Sent. Tr. at 21–25; Garner, 774 F. App'x at 160 ("[T]he district court reviewed the 18 U.S.C. § 3553(a) sentencing factors in detail and concluded that a 120-month sentence was sufficient, but not greater than necessary, due to the seriousness of the underlying conspiracy, Garner's chronic and unabated recidivism, and to protect the public from Garner's criminal conduct."). Therefore, any objection by defense counsel on those grounds would have been baseless.

6

The Sixth Amendment does not require a defense lawyer to make all nonfrivolous objections, much less baseless objections. See Knowles v. Mirzayance, 556 U.S. 111, 124–26 (2009); United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021).

Garner's also argues that withdrawing his objection to not receiving a minor role reduction was ineffective assistance of counsel. See [D.E. 1531] 2. When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Counsel does not perform deficiently by failing "to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles, 556 U.S. at 123. And, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Garner's counsel made the tactical decision to focus on the drug weight objection and his section 3553(a) mitigation arguments. The record indicates that counsel understood accurately the advisory guideline impact of the mitigating role reduction. See id. at 691("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); PSR Add. ¶ 2; cf. United States v. Freeman, 24 F.4th 320, 326, 331 (4th Cir. 2022) (en banc). Moreover, even assuming counsel erred in withdrawing the objection, Garner has not alleged resulting prejudice.

Garner has not plausibly alleged that counsel could have done something differently to obtain a different sentence. This court considered Garner's history and characteristics including his mental health, his history and characteristics, and the nature and circumstances of the offense in fashioning his sentence. Moreover, in imposing the sentence, the court noted that even if it miscalculated the advisory guideline range, it would impose the same sentence as an alternative variant sentence. See Sent. Tr. at 24–25. This court's alternative variant sentence defeats any claim that counsel's

7

performance at sentencing prejudiced Garner. See Molina-Martinez v. United States, 578 U.S. 189, 197– 201 (2016); United States v. Feldman, 793 F. App'x 170, 173–74 (4th Cir. 2019) (per curiam) (unpublished); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 160–65 (4th Cir. 2012); cf. Garner, 774 F. App'x at 160 ("Garner's sentence would be substantively reasonable even if the disputed Guidelines issue was resolved in his favor[.]"). Furthermore, on direct appeal the Fourth Circuit upheld the sentence as substantively reasonable. See Garner, 774 F. App'x at 160 –61. Thus, Garner has not plausibly alleged prejudice. See, e.g., Sears, 561 U.S. at 956; Strickland, 466 U.S. at 689–700.

After reviewing the claims presented in Garner's motion, the court finds that reasonable jurists would not find the court's treatment of Garner's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## III.

Next, the court addresses Garner's motion for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and

8

applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s timing requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

9

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13 cmt. n.2.

The government argues that Garner never submitted a compassionate release application to the warden and failed to exhaust his administrative remedies. See [D.E. 1609] 1, 5–6, 21; Muhammad, 16 F.4th at 130. The court assumes without deciding that Garner met the exhaustion requirements and addresses Garner's motion on the merits.

In support of his motion for compassionate release, Garner cites the COVID-19 pandemic, his desire to care for his elderly mother, his rehabilitation, and his release plan. See [D.E. 1519]; [D.E. 1607] 5–8.

As for the "family circumstances" policy statement, it does not apply to a desire to care for parents. See U.S.S.G. § 1B1.13 cmt. n.1. Nonetheless, the court considers Garner's desire to care

10

for his mother under the "other reasons" policy statement and assumes without deciding that it is an extraordinary and compelling reason.

Garner does not allege that he has any medical conditions that place him at heightened risk from COVID-19. He focuses on the general risk from COVID-19 that arise from the nature of the prison environment. See [D.E. 1607] 5–6. Garner, however, is vaccinated against COVID-19. See [D.E. 1609] 6; [D.E. 1609-1]; see, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). "[F]ollowing full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Moreover, the wide availability of COVID-19 vaccines greatly diminishes the risk to Garner from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra,

11

2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, the general risk of COVID-19 in the prison environment is not an extraordinary and compelling reason. Nonetheless, the court considers Garner's concerns about COVID-19 together with his other reasons under the "other reasons" policy statement.

The court assumes without deciding that COVID-19, Garner's desire to help care for his mother, his rehabilitation, and his release plan together constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Garner's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Garner is 49 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute a quantity of cocaine and a quantity of cocaine base (crack). See PSR ¶¶ 1–13. Garner was a long-time drug dealer who joined with Antonio McKoy and McKoy's extensive drug trafficking organization. See, e.g., id. ¶¶ 11–13. Garner is a violent career criminal and has convictions spanning three decades. See, e.g., id. ¶¶ 18–38. Before his federal conviction, Garner received convictions for resisting and obstructing a public officer, possession of cocaine, simple assault (two counts), common law robbery (two counts), assault with a deadly weapon with intent to kill inflicting serious injury, robbery with a dangerous weapon, conspiracy to traffic in cocaine by delivery, possession of stolen goods or property, trafficking in cocaine by possession, trafficking

12

in cocaine by transportation, trafficking in cocaine by delivery, assault on a government official or employee, resisting a public officer (two counts), disorderly conduct (two counts), simple possession of a schedule VI controlled substance, and injury to real property. See id. Garner also has a poor record on supervision. See id. ¶¶ 19, 21.

Garner has made some positive efforts while federally incarcerated. Garner has taken educational courses and participated in rehabilitative programming. See [D.E. 1607] 7–8. Garner also argues that he has "diligently worked to put his life on the right track since being incarcerated" on his current sentence. Id. at 7.

The court must balance Garner's positive efforts while federally incarcerated with his serious criminal conduct, his horrible criminal history, his long-time commitment to criminality, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Garner's potential exposure to COVID-19, his desire to care for his mother, his rehabilitative efforts, and his release plan. The court recognizes Garner has a supportive family. See [D.E. 1519]; [D.E. 1607] 7. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Garner's arguments, the government's persuasive response, the need to punish Garner for his serious criminal behavior, to incapacitate Garner, to promote respect for the law, to deter others, and to protect society, the court denies Garner's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

13

As for Garner's request for home confinement, Garner seeks relief under the CARES Act. See [D.E. 1519]; [D.E. 1607] 1, 6. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Simon, No. 20-6701, 2022 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (per curiam) (unpublished); United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021); United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Garner requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Garner's request for home confinement.

## IV.

In sum, the court DENIES Garner's motion for compassionate release and request for home confinement [D.E. 1519], GRANTS the government's motion to dismiss [D.E. 1604], DISMISSES Garner's section 2255 motion [D.E. 1531], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This _15_ day of August, 2022.

JAMES C. DEVER III
United States District Judge